# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 17 CR 658-2 |
| | ) | |
| TERRY TAYLOR, | ) | Judge Sara L. Ellis |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

On October 5, 2017, the Government indicted Defendant Terry Taylor for wire fraud, in violation of 18 U.S.C. § 1343, and conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. Following a four-day trial, on March 21, 2019, a jury found Taylor guilty on both counts. Taylor now moves for a judgment of acquittal, or alternatively, a new trial [114, 115]. In support of a judgment of acquittal, Taylor argues that he did not have knowledge of or intent to commit wire fraud and that he could not have reasonably foreseen a wiring in furtherance of the fraud. In support of a new trial, Taylor argues that the Court improperly instructed the jury on aiding-and-abetting liability and deliberate avoidance, and improperly admitted evidence that Taylor did not file tax returns during the scheme. Because the Court finds that the Government introduced sufficient evidence for a jury to find that Taylor had the requisite intent, the Court denies Taylor's motion for a judgment of acquittal. Additionally, the Court denies Taylor's motion for a new trial because the Court finds that it properly instruct the jury and admitted evidence of his failure to file tax returns.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 29 allows a defendant to challenge whether the evidence is "insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "A motion for

acquittal should be granted only where the evidence is insufficient to sustain a conviction." *United States v. Kohli*, 847 F.3d 483, 489 (7th Cir. 2017) (citation omitted) (internal quotation marks omitted). The Court will only overturn the jury's verdict if "after viewing the evidence in the light most favorable to the Government, the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Wrobel*, 841 F.3d 450, 454 (7th Cir. 2016) (quoting *United States v. Campbell*, 770 F.3d 556, 571–72 (7th Cir. 2014)). "When a defendant has introduced evidence in his own defense at trial, we examine the evidence as a whole, including that presented by the defendant." *United States v. Wilson*, 879 F.3d 795, 802 (7th Cir. 2018). "When challenging a conviction based on sufficiency of the evidence, a defendant bears a 'heavy' burden that is 'nearly insurmountable.'" *Kohli*, 847 F.3d at 489 (quoting *United States v. Moses*, 513 F.3d 727, 733 (7th Cir. 2008)).

Federal Rule of Criminal Procedure 33 allows "a district court to grant a timely request for a new trial 'if the interest of justice so requires.'" *United States v. O'Malley*, 833 F.3d 810, 811 (7th Cir. 2016) (quoting Fed. R. Crim. P. 33(a)). Courts look at the weight of the evidence, including the credibility of witnesses, to determine "whether the verdict is against the manifest weight of the evidence." *United States v. Washington*, 184 F.3d 653, 657–58 (7th Cir. 1999). The Court should grant a new trial only if the evidence "preponderates[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *United States v. Swan*, 486 F.3d 260, 266 (7th Cir. 2007) (alteration in original) (quoting *United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989)).

ANALYSIS

I.     **Judgment of Acquittal**

First, Taylor argues that the Government failed to introduce sufficient evidence to sustain his two convictions. "To establish that [Taylor] committed wire fraud, the government had to prove that: (1) [Taylor] participated in a scheme to defraud; (2) with intent to defraud; and (3) interstate wires were used in furtherance of the fraud." *United States v. Bloom*, 846 F.3d 243, 250 (7th Cir. 2017); 18 U.S.C. § 1343. To obtain a conspiracy conviction, the government must prove that: (1) there was a conspiracy; (2) Taylor joined the conspiracy with the intent to further it; and (3) at least one conspirator committed an overt act in furtherance of the agreement. *See United States v. Dingle*, 862 F.3d 607, 614 (7th Cir. 2017).

   A.     **Taylor's Knowledge and Intent**

Taylor argues that he did not know a fraud was occurring, and he did not intend to defraud or knowingly join a conspiracy to commit fraud. Taylor's argument, however, centers around the credibility of two Government witnesses: Sharlon Bailes, Taylor's co-defendant, and Agent Robert Walker. The issues of witness credibility, the resolution of evidentiary conflicts, and inferences that the jury could draw from the evidence presented by the parties, remain in the jury's exclusive domain and the Court cannot consider them in considering a sufficiency of the evidence challenge. *See United States v. Pope*, 739 F.2d 289, 291 (7th Cir. 1984) (the jury has the "exclusive authority to assess the witnesses' credibility, resolve evidentiary conflicts and draw reasonable inferences from the evidence presented").

Instead, the Court must look at the evidence in the light most favorable to the Government and determine whether it sufficiently provided a basis for the jury to conclude that

3

Taylor knew a fraud was occurring, that he intended to defraud, and that he knowingly joined a conspiracy to commit fraud. The Court concludes that it did.

The Court finds that there was sufficient evidence that the jury could conclude that Taylor knew about the alleged fraud. Bailes testified that Taylor owned his own construction company and did remodeling work for her. Doc. 110 at 69. Taylor completed a job at her home painting the interior of the house and Bailes paid him with a check with a check from Near North, of which only 35% actually paid for Taylor's labor and costs for the paint job. Id. at 83. The remaining 65% of the check Taylor split between taxes at 50% and a payment to his contact at the Currency Exchange to cover the contact's fee for cashing the check at 15% . Id. at 83-4. The following week, Bailes gave Taylor another check written on Near North accounts in response to Taylor's request that Bailes help him out. Id. at 85. Bailes testified that Taylor told her that they didn't have to worry about getting caught because he had a connection at the Currency Exchange. Id. Taylor received this check despite having done no work on Bailes' home or any property associated with Near North to justify the payment. Id. at 86 -7. In fact, Taylor never worked as a contractor for a Near North project. Id. Between 2008 and 2012, Taylor received some Near North checks from Bailes as "loans" but he never repaid the money nor received it as compensation for work he had legitimately done for either Bailes or Near North. Id. at 88. Additionally, Agent Walker testified that Taylor admitted he knew cashing the checks was wrong in his first interview with law enforcement. Doc. 112 at 302.

Based on this evidence, a jury could reasonably determine that Taylor knew of the alleged fraud. Taylor accepted these checks written on Near North accounts in spite of the fact that he was not a contractor for any Near North project and at times, in spite of the fact that he had done no work for Bailes. Taylor told Bailes that they would not have worry about getting

caught because of his contact at the Currency Exchange to whom he paid a fee each time he cashed a Near North check. It strains credulity that Taylor would not have known about the fraud and yet still mention to Bailes that she did not have to worry about getting caught. Further, Taylor took checks written on Near North accounts that contained information about specific properties from Bailes for work he did not do in response to his request that she help him out financially. This evidence is sufficient for the jury to find that Taylor knew of the alleged fraud.

As for evidence relating to his intent, "[i]ntent to defraud requires a willful act by the defendant with the specific intent to deceive or cheat, usually for the purpose of getting financial gain for one's self or causing financial loss to another. The intent to defraud may be established both from circumstantial evidence and inferences drawn by examining the scheme itself." *United States v. Domnenko*, 763 F.3d 768, 772–73 (7th Cir. 2014). Here, Taylor benefitted financially from scheme to defraud, receiving money from Bailes for more than the cost of the work he did for her or at times, for doing no work at all. With the proceeds from the scheme, he bought a house and rehabbed it. Doc. 110 at 115-17. He admitted to Agent Walker that Bailes paid him approximately $500 each time for cashing the Near North checks and that he told Bailes he wanted her to pay him more because she was receiving $20 - $30,000 and he only received $500. Doc. 112 at 303-4.

Additionally, the jury could infer Taylor's intent to defraud from the fact that he misled the FBI during its investigation. At times, Taylor changed his story during the same interview session. Id. at 377 ("In the second interview on October 10th he told me two different things within the same interview."); *United States v. Jackson*, 860 F.3d 438, 446 ("[Taylor]'s intent to deceive authorities is underscored by his false statements to the FBI").

5

Finally, Taylor took other actions to conceal his actions further evidencing his intent to defraud. Taylor reassured Bailes that they would not get caught because he had a contact at the Currency Exchange. Doc. 110 at 85. He spoke to Bailes in code to let her know that he had cashed the check. Id. at 92. He asked Bailes to remove his address from the Near North checks. Id. at 109. He kept his daughter, who was his right-hand and second in command at the company, in the dark about his check cashing activities with Bailes. Doc. 113 at 459, 519-20.

Taken as a whole, the record is replete with evidence that Taylor acted in a manner throughout the scheme that revealed that he not only knew about the scheme to defraud but that he had the intent to defraud and knowingly joined the wire fraud conspiracy. The Court cannot consider the witnesses' credibility and invade the province of the jury when deciding Taylor's motion for acquittal. The Court finds that the Government presented sufficient evidence at trial from which the jury could find that the Government satisfied the elements of both a wire fraud and a conspiracy to commit wire fraud.

    B.  **Foreseeability of Interstate Wire Communications**

Taylor also argues that there was insufficient evidence for the jury to find that he could reasonably foresee the use of wire communications in this case. "The government is entitled to prove this element either by showing that the defendant himself personally performed the wire transfer or (more commonly) that he acted with knowledge that the use of a wire would follow in the ordinary course of business or that such use could reasonably be foreseen." *United States v. Adcock*, 534 F.3d 635, 640 (7th Cir. 2008).

Taylor argues that his evidence of his unsophisticated financial knowledge demonstrated that no reasonable juror could conclude that he reasonably foresaw the use of wire communications in this case. Indeed, he testified to the fact that he gave no thought to the

6

process used by the Currency Exchange and the banks once he cashed his check. Doc. 113 at 522–23. Bailes, however, disagreed that Taylor, the creator and owner of his own companies, was financially unsophisticated. Doc. 111 at 184. Certainly, the jury was free to discredit Taylor's testimony as well. Furthermore, as the Government argued, "[a] reasonable person certainly would have foreseen the need to create some manner of transferring money" from Near North to the Currency Exchange for Taylor to continue cashing checks totaling nearly two million dollars. *Adcock*, 534 F.3d at 640. "The days of the Pony Express riders galloping across the countryside with large satchels of cash are long gone." *Id.* Therefore, the Court finds, as it did during trial, that there is sufficient evidence that the use of interstate wire communications was reasonably foreseeable: "[N]obody is running a wheelbarrow full of dollars from Near North over to the Currency Exchange. So that transfer is being done in a way that is electronic." Doc. 113 at 452.

Because credibility determinations are solely within the jury's domain and the Government presented sufficient evidence for a jury to find each element of the crimes for which it convicted Taylor, the Court denies Taylor's motion for a judgment of acquittal.

## II.     New Trial

Alternatively, Taylor argues that he is entitled to a new trial because the Court improperly: (1) instructed the jury on aiding-and-abetting liability, (2) instructed the jury on deliberate avoidance, and (3) admitted evidence that Taylor did not file tax returns during the scheme.

### A.     Aiding and Abetting Instruction

At trial, the Court gave the pattern instruction on aiding and abetting: "Any person who knowingly aids, counsels, commands, induces, or procures the commission of an offense may be

7

found guilty of that offense if he knowingly participated in the criminal activity and tried to make it succeed." Doc. 113 at 589–90. Courts presume that pattern instructions accurately state the law. *United States v. Al-Awadi*, 873 F.3d 592, 597 (7th Cir. 2017). Taylor argues that the Court gave an improper instruction because the instruction suggested that the jury need not find that Taylor had the intent to defraud in order to convict him. However, the Court instructed the jury clearly that "[i]n order for you to find the defendant guilty of [wire fraud], the Government must prove . . . beyond a reasonable doubt . . . that the defendant did so with the intent to defraud." Doc. 113 at 586. The Court also instructed the jury on the legal definition of acting with the intent to defraud: "[a] person acts with the intent to defraud if he acts knowingly with the intent to deceive or cheat in order to cause a gain of money or property to the defendant or another or the potential loss of money or property to another." *Id.* at 588. Contrary to Taylor's assertion, the jury was "properly instructed about the required mens rea." Doc. 115 at 3.

Taylor's reliance on *United States v. Barclay*, 560 F.2d 812 (7th Cir. 1977) is misplaced, because the Seventh Circuit reversed the district court in *Barclay* for failing to give any instructions on intent, unlike the Court's instructions in this case. Furthermore, the Seventh Circuit's recent decision in *United States v. Freed*, 921 F.3d 716 (7th Cir. 2019), found that the court's failure to instruct the jury on the mens rea required to convict the defendant as an aider and abettor did not rise to plain error. In *Freed*, the Seventh Circuit noted that there was "no indication in the record that the jury relied upon the aiding and abetting . . . instruction. The government did not advance a theory at trial that Freed was assisting in this scheme . . . . If the government had argued otherwise the outcome of this case might be different." *Id.* at 721–22. However, the outcome is not different in this case. While the government did advance a theory that Taylor aided and abetted, it did so with specific regard to the third element of wire fraud, the

materially false representation. See Doc. 115 at 2; Doc. 113 at 615–16. Indeed, in its closing argument, the Government did not address aiding and abetting until *after* it had already dealt with the element of intent. Doc. 113 at 597 (listing the elements of wire fraud, including that "the Government must prove that the defendant knowingly devised or participated in a scheme to defraud; that the defendant did so with the intent to defraud"), 602 ("So having proven that the scheme to defraud existed, let's move to defendant's knowledge and his intent to defraud"), 603 (defining intent to defraud) 604–14 (arguing Taylor's specific knowledge and intent, not just as an aider or abettor). The jury, after receiving proper instructions on the elements it must find beyond a reasonable doubt to convict Taylor of wire fraud, including the intent to defraud, was not invited to find Taylor guilty without a finding that he intended to defraud. The Court therefore finds that this instruction was proper and finds no indication that the jury relied on the aiding and abetting instruction regarding the question of Taylor's intent. *Freed*, 921 F.3d at 721.

### B. Ostrich Instruction

At trial, the Court instructed the jury, "You may find that the defendant acted knowingly if you find beyond a reasonable doubt that he believed it was highly probable that cashing Near North National Title, LLC's checks was unlawful and that he took deliberate action to avoid learning that fact. You may not find that the defendant acted knowingly if he was merely mistaken or careless in not discovering the truth or if he failed to make an effort to discover the truth." Doc. 113 at 587. This deliberate indifference instruction is commonly referred to as an ostrich instruction. Taylor argues that the Court improperly gave this instruction because the Government did not present sufficient evidence that he engaged in any active behavior to avoid learning he was involved in criminal activity.

"An ostrich instruction is appropriate where (1) a defendant claims to lack guilty knowledge . . . and (2) the government presents evidence from which a jury could conclude that the defendant deliberately avoided the truth." *United States v. Tantchev*, 916 F.3d 645, 653 (7th Cir. 2019) (quoting *United States v. Garcia*, 580 F.3d 528, 537 (7th Cir. 2009)). "The main question is 'what a defendant knew and whether that knowledge raises a reasonable inference that he remained deliberately ignorant of facts constituting criminal knowledge.'" *United States v. Salinas*, 763 F.3d 869, 878 (7th Cir. 2014) (quoting *United States v. Ramirez*, 574 F.3d 869, 877 (7th Cir. 2009)). "Deliberate avoidance can be demonstrated either by the defendant's 'overt physical acts,' or by the defendant 'cutting off his normal curiosity by an effort of will.'" *United States v. Gonzalez*, 737 F.3d 1163, 1168–69 (7th Cir. 2013) (quoting *United States v. Craig*, 178 F.3d 891, 896 (7th Cir. 1999)). "[A] jury can infer the deliberate avoidance of knowledge from circumstantial evidence alone." *United States v. Pabey*, 664 F.3d 1084, 1093 (7th Cir. 2011).

Taylor argues that he did not engage in deliberate avoidance because he asked why Bailes paid him the way she did. However, the answer she gave, that "she wouldn't have to pay that much in taxes on the money," and that "she wouldn't be penalized if she's showing that she's doing work with the money," Doc. 113 at 468–69, should have raised suspicions about the legality of the operation, which alone "warranted an ostrich instruction." *United States v. Green*, 648 F.3d 569, 582 (7th Cir. 2011) ("This evidence alone, demonstrating knowledge of his cohort['s] involvement in suspicious activities, warranted an ostrich instruction."). Furthermore, Agent Walker testified that Taylor told him that he felt "something was wrong" with cashing the checks, but Taylor did not follow up on his suspicions. Doc. 112 at 302. Because the Government presented sufficient evidence for a reasonable jury to find that Taylor knew of Bailes' involvement in suspicious activities and he deliberately avoided learning the truth, the

10

Court finds that it properly gave the ostrich instruction. *Green*, 648 F.3d at 582; *Tantchev*, 916 F.3d at 653.

C. **Tax Returns Evidence**

Taylor argues that the Court improperly admitted evidence that he failed to file tax returns during his involvement in the fraudulent scheme. The Government offered the evidence as a stipulation under Federal Rule of Evidence 404(b) to demonstrate his knowledge and intent of the fraudulent scheme. Taylor argues, however, that the probative value of this evidence was outweighed by its prejudicial impact.

Under Rule 404(b), the proponent of other-act evidence

> must first establish that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way. This does not mean, however, that evidence is excluded whenever a propensity inference is possible. But in such a case, the relevance of the evidence to a proper purpose must be established through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case. Moreover, if and when the proponent makes this showing, the district court must then assess whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice and may exclude the evidence under Rule 403 if the risk is too great."

*United States v. Mabie*, 862 F.3d 624, 632–33 (7th Cir. 2017) (citation omitted) (internal quotation marks omitted). Taylor argued at trial that he did not have knowledge of the fraudulent scheme or the intent to defraud. The Government, therefore, offered evidence that Taylor failed to file tax returns in order to hide evidence from the IRS as evidence of his knowledge and intent to defraud, which are proper purposes under Rule 404(b). *See United States v. Briscoe*, 896 F.2d 1476, 1500 (7th Cir. 1990) ("In the Rule 404(b) context, [Defendant]'s failure to file income tax returns evinced his knowledge and intent concerning his

11

illicit narcotics trafficking activities."); *United States v. Benalcazar*, No. 09 CR 144, 2011 WL 4553027, at *15 (N.D. Ill. Sept. 29, 2011) ("[T]he failure to document his income in tax returns during the years that he participated in the scheme is relevant to his desire to conceal any ill-gotten profits as well as his knowledge of the scheme's illegality.").

Taylor argues that this evidence harmed his credibility, and in doing so, prejudiced his case. However, Federal Rule of Evidence 403 protects against unfair prejudice, not just any prejudice. *United States v. Lloyd*, 71 F.3d 1256, 1265 (7th Cir. 1995) ("Rule 403 was never intended to exclude relevant evidence simply because it is detrimental to one party's case; rather, the relevant inquiry is whether any unfair prejudice from the evidence substantially outweighs its probative value." (citations omitted)). In admitting this evidence at trial, the Court found that any unfair prejudice did not substantially outweigh the probative value of this evidence that demonstrated both Taylor's potential knowledge and intent. *See Briscoe*, 896 F.2d at 1500; *Benalcazar*, 2011 WL 4553027, at *15. The Court declines to revisit its earlier decision and continues to find that it properly admitted this evidence.

### D. Cumulative Error

Finally, Taylor argues that each of the proposed errors taken together caused a cumulative effect that requires a new trial. Because the Court does not find that it committed any of the proposed errors, it also finds that there is no cumulative effect.

## CONCLUSION

For the foregoing reasons, the Court denies Taylor's motions for acquittal or a new trial [114, 115].

Dated: September 16, 2019

_____
SARA L. ELLIS
United States District Judge